UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DESHAWN A. FOSTER,

                    Plaintiff,                              Case No. 2:22-cv-55

v.                                                          Honorable Maarten Vermaat

S. MINERICK,

                    Defendant.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties

to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about

which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga,

Baraga County, Michigan. Plaintiff sues Inspector S. Minerick.

In Plaintiff's amended complaint, he alleges that on December 16, 2020, he sent an email

to a friend via Jpay. In the email, Plaintiff stated: "13 people went to the hole and a[n] officer got

hurt. They shoulda killed the bitch he probably faking hurt which they do all the time." (ECF No.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017)
(concluding that, when determining which parties are required to consent to proceed before a
United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the
United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a
screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c));
*Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for
the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207
n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its
meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other
contexts").

6-1, PageID.58.) Defendant Minerick and Assistant Deputy Warden Hoffman called Plaintiff to the block Assistant Resident Unit Supervisor office shortly after 10:00 a.m. on December 17, 2020. Both looked at Plaintiff with disdain and hostility. Defendant Minerick held up a copy of Plaintiff's email and asked if Plaintiff was aware that people read his Jpay email. Plaintiff explained that he had only been expressing his opinion about an event that had already occurred to a friend. Plaintiff states that the event had occurred in a unit that Plaintiff did not have access to and that Defendant Minerick knew it was impossible for Plaintiff to have been involved. Assistant Deputy Warden Hoffman asked Plaintiff if he disliked all white people or only those in law enforcement. Plaintiff responded that he only disliked people in the position of authority who abuse their authority, and that it was none of Hoffman's business. Defendant Minerick told Plaintiff to get out of the office but warned that if Plaintiff wrote another Jpay email like the previous one he would be going to segregation.

On December 17, 2020, Plaintiff sent another Jpay email to the same friend, explaining why she had not received the prior email. On December 18, 2020, Plaintiff was told that he would not be allowed to go to the yard. Shortly thereafter, Plaintiff was escorted to segregation and was reviewed on a threatening behavior misconduct for the first Jpay email. Plaintiff believes that the only reason that Defendant wrote the misconduct was because of his second email to his friend. During the hearing on January 4, 2021, the Hearing Officer changed the charge from threatening behavior, a class I misconduct, to insolence, a class II misconduct, stating that Plaintiff's comment did not cross the line to become a threat, but that Plaintiff should have known that his comment – "They shoulda killed the bitch . . ." – would be alarming to staff because Jpay messages are monitored. (ECF 1-5, PageID.27.) Plaintiff was found guilty of insolence and was confined to

segregation from December 18, 2020, until January 7, 2021, served 7 days loss of privileges, and

lost out on 60 days of incentive program participation. (*Id.*; ECF 6-1, PageID.60.)

Plaintiff claims that Defendant violated his rights under the First and Fourteenth

Amendments. Plaintiff seeks injunctive relief, compensatory, punitive, and nominal damages, and

costs.

## II.    Plaintiff's Motion to Amend

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend his

or her pleading once, as a matter of course, in the preliminary stages of a case. Fed. R. Civ.

P. 15(a)(1). Here, Plaintiff filed his motion to amend before the service of a responsive pleading,

and he submitted his amendment with his motion. Under these circumstances, the Court will grant

Plaintiff's motion to amend (ECF No. 6) and will address the amendment that he filed with this

motion in this opinion.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a

complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The court must determine whether the complaint contains "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Due Process

Plaintiff asserts a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause, presumably in connection with his prison disciplinary proceedings. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). It is clear from the attachments to Plaintiff's complaint that his Class I misconduct charge was changed to a Class II charge by the hearing officer. Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Even if Plaintiff was convicted of Class I misconducts, he fails to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a

> sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 472; *see also Ingram v. Jewell*, 94 F.

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

App'x 271, 273 (6th Cir. 2004) (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). Plaintiff has not identified any significant deprivation arising from his misconduct convictions.

Finally, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff attaches a copy of the December 16, 2020, hearing report, which shows that Plaintiff was present at the hearing and presented his argument that the statement for which he received the ticket did not constitute a threat, and that the only reason he received the misconduct ticket was because he sent a second Jpay email to the same recipient. (ECF No. 1-5, PageID.27.) The hearing report shows that the Hearings Officer considered Plaintiff's statements and found:

> Threatening Behavior (012) MDOC PD 03.03.105 Words, actions or other behavior which expresses an intent to injure or physically abuse another person. Prisoner's

claim the Inspector could not write this charge is not correct. Anyone with knowledge of an incident may write a misconduct. Also the delay in writing this is not significant. Why the inspector needed to investigate is his option. It did not prejudice the prisoner in any way. He is correct, though, that he was not given the status until the 18th. However, that does not affect the charge in any way other than when a misconduct must be heard and it is still within time limits. Having read the J pay letter the prisoner is correct in that the quote is not quite accurate. The prisoner's comment was, "They shoulda killed the bitch…" (This was a contraction for should have.) The prisoner was commenting on the incident to which the inspector had referenced. While the comment was alarming to staff and therefore insolent, I do not find it meets the threshold to be considered a threatening behavior. See: Insolence (426) MDOC PD 03.03.105 Words, actions or other behavior which is intended to harass, degrade, or cause alarm in an employee. This prisoner was not involved in the original incident (multi-man fight). There was no intent on his part to injure or abuse anyone. He was commenting on what the prisoner should have done after the fact. While he indicated that they should have killed the officer, he was not indicating his intent to injure the officer. In this instance his comments did not cross the line to become a threat. It is a comment which he knew or should have known would be alarming to staff because such messages are monitored and is therefore considered insolence.

(*Id.*)

It is clear from the record in this case that Plaintiff had the opportunity to convince an unbiased decision maker that he had been wrongly or falsely accused or that the evidence against him was false. The Hearings Officer clearly considered Plaintiff's statement, the content of the Jpay email at issue, as well as the misconduct report. The fact that Plaintiff was found guilty of a lesser offense also suggests that he received a fair hearing.

For all of these reasons, Plaintiff fails to state a viable due process claim.

**B.    Retaliation**

Plaintiff claims that Defendant Minerick retaliated against him for writing a second email to his friend by writing a misconduct related to the first email. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse

action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court assumes without deciding that Plaintiff had a protected right to communicate with his friend via email in accordance with prison policy. However, conduct which violates a legitimate prison regulation is not protected conduct. For example, the Sixth Circuit has found that a prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *see also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Therefore, Plaintiff's initial email, in which Plaintiff stated that prisoners should have killed a corrections officer during a prior incident in another unit and was found to constitute insolence, was not protected conduct. However, to the extent that Plaintiff insists that the misconduct ticket was motivated by his second email, which

did not violate policy, the Court will assume that he has satisfied the first prong of the test set forth in *Thaddeus-X*.

In addition, the Court notes that the receipt of a misconduct ticket, for which Plaintiff served 7 days loss of privileges, and lost out on 60 days of incentive programs' participation, would deter a person of ordinary firmness from engaging in protected conduct. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).

As to the third prong set forth in *Thaddeus-X v. Blatter*, Plaintiff fails to allege facts showing that his second email was a motivating factor in Defendant's decision to write the misconduct ticket. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

In this case, Plaintiff states that Defendant told him that if Plaintiff wrote another Jpay email like the previous one he would be going to segregation. Defendant's comment to Plaintiff

was clearly a warning not to write further email containing comments condoning violence against prison employees. Plaintiff does not claim that Defendant told him not to write ANY other emails and fails to allege any facts showing that Defendant did indeed write the misconduct ticket as a result of Plaintiff's second email. Moreover, the hearing officer addressed the timing of the misconduct ticket in the hearing report, stating that "the delay in writing [the misconduct ticket] is not significant." (ECF No. 1-5, PageID.27.) The hearing officer noted that it was for the Defendant to decide what, if anything, needed to be investigated prior to writing the ticket, so long as it was written within the time limits, and that Plaintiff had not been prejudiced in any way. (*Id.*) Because Plaintiff has failed to allege any facts showing that Defendant's conduct in writing the misconduct ticket was motivated by anything but the content of the first email, which was found to have violated prison policy following a hearing, his retaliation claim fails.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

13

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:    July 26, 2022                        /s/ *Maarten Vermaat*
                                               Maarten Vermaat
                                               United States Magistrate Judge